THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILLIP A. POWELL and ROSEMARY POWELL, ) ) ) ) *Plaintiffs*, ) v. ) ) CHICAGO HOUSING AUTHORITY, ) ) *Defendant.* ) ) | No. 24 C 12068 Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Phillip A. Powell and Rosemary Powell sued the Chicago Housing Authority under 42 U.S.C. § 1983 based on CHA's decision to terminate their low-income housing assistance under Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"). (Dkt. 14 ¶ 2). The Powells allege CHA violated both Section 8 and the Due Process Clause of the Fourteenth Amendment. (*Id.*) CHA moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 19). For the following reasons, the Court grants CHA's Motion to Dismiss [19] under Rule 12(b)(6).

**BACKGROUND**

In 2022, the Powells were Section 8 Housing Choice Voucher recipients living in an apartment on the north side of Chicago. (Ex. 7, Dkt. 14 at 7 (Amendment to the Housing Assistant Payment Contract)). The Powells received $1,624 per month in housing assistance through the program. (*Id.*) CHA, the administrator of Chicago's subsidized housing program, periodically

1

inspects subsidized units to ensure tenants are complying with the program's "Family Obligations." (Ex. 1, Dkt. 1 at 4 (Intent to Terminate Participant Letter)). CHA conducted one of these inspections on March 3, 2022, and reported a Family Obligation violation due to a missing smoke or carbon monoxide detector within fifteen feet of a bedroom. (*Id.*) CHA reinspected the property on March 31, 2022 and reported the same violation. (*Id.*; Dkt. 14 ¶ 4).

Based on the lack of an operable detector, CHA issued an "Intent to Terminate" the Powells's participation in its Housing Choice Voucher Program on April 6, 2022. (Ex. 1, Dkt. 1 at 4). The termination letter included a notice informing the Powells of their right to a hearing, and directed them to request an informal hearing within thirty days. (*Id.* at 5). The letter went on to warn the Powells that failure to request an informal hearing would result in CHA's termination decision becoming final. (*Id.*) CHA also sent the Powells's landlord, Zachariah George, a notice on April 6, informing him of CHA's intent to terminate the Powells's housing assistance. (Ex. 5, Dkt. 1 at 10 (Notice to Owner of Intent to Terminate)).

The Powells claim the Family Obligation violation was falsely reported and promptly requested an informal hearing on May 3, 2022—within the thirty-day period. (Dkt. 14 ¶ 4). CHA approved the request more than six months later, on November 16, 2022. (Ex. 3, Dkt. 1 at 8 (Informal Hearing Request Decision Notice)). That approval notice, however, stated the Powells requested a hearing on August 2, 2022, not May 3, 2022. (*Id.*) Regardless, CHA never scheduled a hearing on the Powells's voucher termination. (Dkt. 14 ¶ 5).

Despite the Powells's timely request for an informal hearing—but before CHA acknowledged a hearing request was made in the first place—CHA sent George a notice of final termination of the Powells's voucher on July 22, 2022, effective August 31, 2022. (Ex. 4, Dkt. 1 at 9 (Final Termination Notice to Landlord)). The basis for termination was: "No hearing request

2

received." (*Id.*) While Rosemary Powell's name and address were listed on the final termination notice, she denies receiving it in 2022. (*Id.*; Dkt. 14 ¶ 6). The Powells continued paying their reduced rent through 2022 and did not receive any notice of their final voucher termination until April 19, 2023, when they were served with an eviction summons. (Dkt. 14 ¶¶ 6–7). George took possession of their unit by means of an eviction order on September 22, 2023. (*Id.* ¶ 6; Ex. 6, Dkt. 1 at 11 (Docket of Eviction Proceedings)). The Powells's later attempts to obtain housing assistance were denied based on their failure to request a hearing. (Dkt. 14 ¶ 8).

The Powells filed this action *pro se* on November 22, 2024, alleging CHA violated their right to procedural due process as guaranteed by the Fourteenth Amendment. (Dkt. 1). They filed an amended complaint on March 13, 2025 seeking $250,000 in damages and prompt reinstatement of their Section 8 benefits. (Dkt. 14 ¶ 13). CHA was served with a summons and copy of the amended complaint on March 28, 2025 and promptly moved to dismiss under Rules 12(b)(1) and 12(b)(6) on April 18, 2025. (Dkt. 17; Dkt. 19).

## LEGAL STANDARD

Subject matter jurisdiction impacts the Court's "fundamental power to hear [a] case at all." *Craig v. Ontario Corp.*, 543 F.3d 872, 877 (7th Cir. 2008). Therefore, the Court must dismiss a complaint if subject matter jurisdiction is lacking. Fed. R. Civ. P. 12(b)(1). The Court addresses subject matter jurisdiction challenges first, as dismissal under Rule 12(b)(1) renders all other arguments moot. *See Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998). The party invoking jurisdiction always bears the "burden of showing its existence." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). But there are two types of jurisdictional challenges, facial and factual. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). Facial

challenges are subject to the same "plausibility" standard used to evaluate Rule 12(b)(6) motions to dismiss. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). All well-pleaded facts alleged in the complaint are considered true, and all reasonable inferences are drawn in the plaintiff's favor. *Gociman v. Loyola Univ. Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "In the context of facial challenges, . . . the court does not look beyond the allegations in the complaint, which are taken as true for the purposes of the motion." *Apex Digital*, 572 F.3d at 444 (7th Cir. 2009).

To survive a Rule 12(b)(6) motion, "a plaintiff's complaint must contain allegations that plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Additionally, the Court holds a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "Legal conclusions or bare conclusory allegations, however, are insufficient to state a claim." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 589 (7th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678, 680).

## DISCUSSION

Under Section 8, the Department of Housing and Urban Development ("HUD") subsidizes a portion of a participant family's rent. The program is typically administered by state or local government entities called public housing agencies ("PHAs"). 24 C.F.R. § 982.1(a)(1). Defendant CHA is a PHA authorized to administer the program in Chicago and receives financial aid from

HUD. 42 U.S.C. § 1437f(o). As recipients of federal funding, CHA must comply with all applicable HUD regulations. 24 C.F.R. § 982.52(a). One such regulation requires PHAs to provide the opportunity for a hearing when there is a "determination to terminate assistance for a participant family because of the family's action or failure to act." § 982.555(a)(1)(iv). The opportunity must be given "before the PHA terminates housing assistance payments." § 982.555(a)(2). The family must be notified of their opportunity for a hearing via a written notice, which must also include "the deadline for the family to request the hearing." § 982.555(c)(2). With this framework in mind, the Court now turns to CHA's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6).

I. **Subject Matter Jurisdiction**

CHA first argues that the Court does not have subject matter jurisdiction over this case because (1) 42 U.S.C. § 1437f does not include a private right of action that can be enforced via § 1983, and (2) the Powells's due process concerns must have been brought in state court via a common law writ of *certiorari*. (Dkt. 19 at 6–10). "Congress has conferred subject matter jurisdiction on the district courts only in cases that raise a federal question and cases in which there is diversity of citizenship among the parties." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802 (7th Cir. 2009) (citing 28 U.S.C. §§ 1331–32). The Powells allege that CHA deprived them of rights secured by § 1437f and the Fourteenth Amendment. (Dkt. 14 ¶ 2). The Court addresses in turn whether their claims are sufficient to confer federal question jurisdiction under § 1331.

A. **42 U.S.C. § 1437f**

Title 42 U.S.C. § 1437f does not create a private right of action enforceable under § 1983, and thus is insufficient to confer subject matter jurisdiction under § 1331. Whether a statutory

5

violation may be enforced via § 1983 turns on whether "Congress intended to create a federal right" with statutory text that "must be phrased in terms of the persons benefitted." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002) (emphasis and internal quotation marks omitted). Although other provisions of the United States Housing Act have been found to confer enforceable rights, § 1437f lacks the requisite language indicative of congressional intent to create a private right of action. *See, e.g.*, *Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 431–32 (1987) (holding an amendment to § 1437 conferred enforceable rights through mandatory language that a low-income family "shall pay as rent" only a limited percentage of income). Section 1437f contains neither rights-creating language directed at housing choice voucher beneficiaries nor addresses requirements for informal hearings for terminations of assistance. Instead, it merely authorizes the creation and funding of housing voucher programs. Accordingly, § 1437f does not provide a vehicle for the Powells to bring a federal action challenging the termination of their voucher benefits. *See Powell v. Chi. Hous. Auth.*, 2015 U.S. Dist. LEXIS 84149, at *4 (N.D. Ill. June 29, 2015) ("[T]here appears to be no private right of action against the CHA for termination of voucher benefits."). This is not the end of the inquiry, however, because the Powells do not rely on § 1437f alone to establish the Court's jurisdiction over their case.

　　B.  Procedural Due Process

Section 1983 provides a remedy "for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Gonzaga Univ.*, 536 U.S. at 283. The Court has addressed the Powells's alleged statutory violation, but now must turn to their alleged constitutional deprivation. For if they have adequately pled that CHA deprived them of a right secured not by § 1437f, but by the Fourteenth Amendment, and there is no showing that Congress "specifically foreclosed a remedy under § 1983," the Court undoubtedly has subject matter

6

jurisdiction over the matter. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989). The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "A procedural due process claim requires the plaintiff to show (1) that he was deprived of a protected liberty or property interest, and (2) that he did not receive the process that was due to justify the deprivation of that interest." *Armato v. Grounds*, 766 F.3d 713, 721–22 (7th Cir. 2014).

Section 8 beneficiaries like the Powells possess a property interest protected by the Fourteenth Amendment. *See Simmons v. Drew*, 716 F.2d 1160, 1162–64 (7th Cir. 1983). Voucher benefits are governed by federal statutes and regulations that limit the discretion of government bodies to terminate or modify them without following specific procedures. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). They are thus analogous to other protected property interests, such as a public school teacher's job tenure, which "restricts the power of a state to terminate the employment of one of its teachers . . . so long as the state lacks just cause to fire him," *Simmons*, 716 F.2d at 1162 (citing *Perry v. Sindermann*, 408 U.S. 593 (1972)), or to welfare benefits, the eligibility for which is created and defined by statute, *see Roth*, 408 U.S. at 578 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)). Section 1437f creates and defines eligibility for vouchers, and similarly limits "the power of a PHA to deny rent assistance . . . until the certificate expires [and] gives the family the right to continue participating in the program so long as the PHA lacks just cause to expel it." *Simmons*, 716 F.2d at 1162.

For example, in *Simmons*, a plaintiff received Section 8 benefits but was expelled by her local housing authority after she moved into a new residence before her prior lease ended. 716 F.2d at 1162. Ultimately, the court held that "a certificate admitting [a family] into the rent assistance program . . . is a species of property protected by the Fourteenth Amendment," and the PHA was

7

"constitutionally required to grant [plaintiff] a hearing before it expelled her," which it failed to do. *Id.* at 1161–62, 1164; *see also Pickett v. Hous. Auth. of Cook Cnty.*, 114 F. Supp. 3d 663, 667 (N.D. Ill. 2015) ("The Due Process Clause and Section 925.555(a) require a PHA to provide a hearing on a decision terminating a participant from the Voucher program, because a participant . . . has a legitimate expectation of remaining in the program."). Like the plaintiffs in *Simmons* and *Pickett*, the Powells have sufficiently alleged a due process violation subject to federal review under § 1983 by claiming that they (1) were active recipients of Section 8 housing benefits, and (2) were denied an opportunity to be heard before the CHA terminated their program benefits.[1] Accordingly, the Court finds it has subject matter jurisdiction over the case and denies CHA's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1).

## II. Administrative Review

Instead of attacking the plausibility of the Powells's Due Process claim, CHA argues their case cannot proceed in federal court because they effectively seek administrative review, which can only be brought in state court. (Dkt. 19 at 6, 8–10). While CHA frames this as a challenge to the Court's subject matter jurisdiction, it is essentially an exhaustion or waiver argument, appropriately considered under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Miles v. Vill. of Dolton*, 2016 WL 1161293, at *4 (N.D. Ill. Mar. 23, 2016) (considering whether an analogous constitutional challenge was waived for plaintiff's failure to raise it in state court). Either way, CHA's argument ignores a key fact: the Powells's were never given an informal hearing. A federal remedy exists under § 1983 for deprivations of a protected interest without adequate process. *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). In contrast, a plaintiff must seek administrative review in state court

---

[1] Again, CHA does not dispute that the Powells were denied an informal hearing despite federal regulations requiring one. *See* 24 C.F.R. § 982.555(a)(1)(iv), (a)(2).

when they have received the process they were due but wish to challenge the final agency determination. *See Holstein v. City of Chicago*, 29 F.3d 1145, 1148 (7th Cir. 1994); *see also Kelley v. CHAC, Inc.*, 2011 U.S. Dist. LEXIS 41962, at *4–6 (N.D. Ill. Apr. 14, 2011) (holding that when the PHA provided a hearing before termination from the Section 8 program, the proper avenue to challenge the decision was in state court).

Defendants are correct that administrative review is "broad in scope and extends to all questions of fact and law contained in the record before the court." *Holstein*, 29 F.3d at 1148. But this is a case where the Plaintiffs' Amended Complaint seeks an administrative hearing in the first place; it is not an appeal of "an administrative hearing" that was afforded the Powells. *See, e.g., Holstein v. City of Chicago*, 803 F. Supp. 205, 211 (N.D. Ill. 1992); (Dkt. 19 at 6). In a common law *certiorari* proceeding, the state court has an opportunity to review the administrative record and may reverse only if the agency's decision is against the manifest weight of the evidence. *Norton v. Nicholson*, 543 N.E.2d 1053, 1059 (Ill. App. Ct. 1989). But there is no such administrative record or evidence to speak of in this case because, again, no hearing occurred. As a result, the procedural framework that administrative review presupposes is entirely missing. *Cf. Miles*, 2016 WL 1161293, at *4 (declining to find administrative review barred the court from considering a constitutional argument when nothing in the record suggested that "that anything related to the issue was a 'question of fact [or] law in the record' before the administrative agency" (alteration in original)).

CHA's reliance on *Holstein* is misplaced. That case involved a plaintiff who was given both a phone and in-person hearing after his car was towed by the City of Chicago. *Holstein*, 29 F.3d at 1146–47. The Seventh Circuit affirmed the district court's dismissal on the basis that

the plaintiff, "as a party disappointed in a determination made by a municipality's administrative agency" could only seek "review in the circuit court by the common law writ of *certiorari*." *Id.* at 1148 (citing *Graff v. City of Chicago*, 9 F.3d 1309, 1325 (1993)). Unlike the plaintiff in *Holstein*, the Powells were denied an informal hearing altogether before termination of their voucher. These facts give rise to a constitutional challenge appropriate for review in federal court. *Zinermon*, 494 U.S. at 126. This distinction also explains why an earlier, similar suit the Powells filed in federal court was dismissed for failure to exhaust state remedies. *See Powell*, 2015 U.S. Dist. LEXIS 84149, at *4. In that case, the Powells received two "Intent to Terminate" letters but failed to request an informal hearing within the required thirty-day period, thereby waiving the opportunity for a hearing and rendering the termination final. *Id.* The court concluded that the Powells "did not exhaust their administrative remedies" and the complaint "would have to be filed in Illinois state court within six months . . . not in federal court." *Id.* Their case now is materially different. Although the Powells again received an "Intent to Terminate" letter, this time they promptly requested an informal hearing. (Dkt. 14 ¶ 4). As the notice itself stated, termination would become final *only if* no hearing was requested. They thus cannot be said to have waived their right to administrative review in the same way.

      Two final points merit brief discussion. First, the Court is wary of an outcome confining a claim like Powells's to state court when Plaintiffs allege they were never notified that a state court remedy was available to them. Unlike cases where the availability of a state court challenge "should not be news to Plaintiff" because their hearing decision included a disclaimer stating their "only recourse is to file a petition with the Circuit Court of Cook County," the Powells never got that far, because any such notice would come only after an informal hearing. *See Kelley*, 2011 U.S.

Dist. LEXIS 41962, at *4. And second, the Court is unclear on how the Powells could ever have been expected to file a "common law writ of certiorari in Illinois state court within six months of CHA's decision," as the Defendant suggests. (Dkt. 19 at 9). Taking the Powells's allegations as true, they did not even receive notice of their voucher termination until April 19, 2023, more than seven months after CHA's decision became final. (Dkt. 14 ¶¶ 6–7). All the while, they were paying subsidized rent and under the impression that their informal hearing request had been granted. (Ex. 3, Dkt. 1 at 8). These facts further counsel against finding the Powells's claims to be barred by principles of administrative review.

For the reasons set forth above, the Court finds that the Powells may proceed in federal court.

### III. Municipal Liability

CHA also seeks to dismiss the Powells's claim under Rule 12(b)(6) for failure to sufficiently allege a *Monell* claim. (Dkt. 19 at 11). Plaintiffs suing municipal government entities like CHA under § 1983 must plausibly allege that their constitutional rights were violated, under color of law, because of the municipality's "policy or custom." *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see Herring v. Chi. Hous. Auth.*, 850 F. Supp. 694, 704 (N.D. Ill. 1994) (recognizing CHA is a "municipal corporation organized under the Illinois Housing Authorities Act"). There are "three requirements to establish a *Monell* claim," (1) policy or custom, (2) fault, and (3) causation. *Bohanon v. City of Indianapolis*, 46 F.4th 669, 676 (7th Cir. 2022).

CHA argues the Powells have failed to sufficiently allege a municipal policy or custom. (Dkt. 19 at 11). A policy or custom can be established by alleging "(1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final

11

policymaking authority." *Gonzales v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022) (citing *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021)). The Powells do not specify which theory supports their claim and instead cite a few cases involving CHA as a defendant to show it does not have absolute immunity. (Dkt. 14 ¶ 2). Those cases, however, address materially different issues. The Powells's Complaint does not raise any facts pertaining to an express CHA policy or a decision by an agent with final policymaking authority. Although the *pro se* Plaintiffs similarly fail to discuss any widespread custom or practice, the Court construes their allegations liberally and considers that approach below. *See Childress v. Walker*, 787 F.3d 433, 436 n.1 (7th Cir. 2015).

To prevail on a widespread custom or practice theory, a plaintiff must allege facts "that permit a reasonable inference that the [municipal defendant's] practice is widespread and that the specific violations complained of were not isolated incidents." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). This can be satisfied in two ways. First, a theory of widespread custom or practice is more persuasive if the plaintiff can show that the defendant treated other, similarly situated people in the same way. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021). "There is no clear consensus as to how frequently such conduct must occur to impose liability, except that it must be more than one instance . . . or even three." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citation modified). Second, alleging a single incident may suffice in narrow circumstances where additional context supports a reasonable inference of a widespread practice. *See White v. City of Chicago*, 829 F.3d 837, 843–44 (7th Cir. 2016). In *White*, the plaintiff sued the City of Chicago for violating his Fourth Amendment rights after an officer allegedly failed to present sufficient information to establish probable cause for an arrest warrant. *Id.* at 839. Although the *Monell* claim was based on a single incident, the plaintiff

also alleged that the officer used a conclusory, standard printed form. *Id.* at 841. The court held that "[t]ogether with the individual claim against [the officer] and the standard printed form that does not require specific factual support" the allegations sufficed to allege a widespread practices claim. *Id.* at 844.

The Powells have failed to plausibly allege that CHA has a widespread practice of denying Section 8 recipients informal hearings before terminating their benefits. In their complaint, the Powells provide no examples of similar incidents to support their personal account. Nor do they allege that any exist. Although alleging only a single incident is not dispositive, the Powells have also failed to allege any other facts that would "permit a reasonable inference that the practice is widespread . . . ." *See Gill*, 850 F.3d at 344. Therefore, the Court finds that the Powells do not sufficiently allege a widespread custom or practice to support their *Monell* claim. *See Iqbal*, 556 U.S. at 679. Indeed, the Seventh Circuit affirmed a dismissal for failure to allege a *Monell* claim in a nearly identical case. *See Chaney v. Chicago Hous. Auth.*, 2024 WL 4751208, at *1 (7th Cir. Nov. 12, 2024). In *Chaney*, the plaintiff challenged CHA's decision to deny his request for an informal hearing related to his housing benefits. The court affirmed the district court's dismissal of the plaintiff's due process claim because his "reference to a single incident . . . [was] not enough to allege a policy or custom under *Monell*." *Id.* The Powells's allegations are no different. Accordingly, the Court grants CHA's motion to dismiss under 12(b)(6). Because the Powells may still be able to allege a plausible *Monell* claim with additional facts, or proceed against individual defendants instead, the dismissal is without prejudice.

## CONCLUSION

For the reasons set forth above, CHA's Motion to Dismiss [19] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: June 30, 2025